FILED
SUPERIOR COURT
OF GUAM

2023 JUN 29 PM 1:39

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| IN THE MATTER OF THE ESTATE<br><br>OF<br><br>**JUAN PEREZ SANTOS,**<br><br>**Deceased.** | **PROBATE CASE NO. PR0240-21**<br><br>**DECISION AND ORDER<br>RE SECOND AMENDED PETITION<br>AND CROSS-PETITION** |

The matter came before the Honorable Dana A. Gutierrez on February 16, 2023 for hearing on competing petitions, Petitioner Devon Santos-Martinez's ("Devon") Second Amended Petition to Admit Will and for Letters Testamentary ("Second Amended Petition"), and Cross-Petitioner Julie Marie D.J. Materne's ("Julie") Cross Petition for Probate of Will and for Letters Testamentary ("Cross-Petition"). Present at the February 16, 2023 Hearing was Devon with counsel Attorney Georgette Bello Concepcion and Julie with counsel Attorney Charles McDonald. Based upon the arguments presented and applicable laws, the Court hereby **GRANTS** Devon's Second Amended Petition and **DENIES** Julie's Cross-Petition.

### BACKGROUND

On December 30, 2021, Devon filed a Petition to Admit Will and for Letters of Administration with Will Annexed. On February 4, 2022, Devon filed an Amended Petition to Admit Will and for Letters of Administration with Will Annexed ("Amended Petition"), adding that Julie revoked her right to serve as executor pursuant to 15 GCA § 1505 and that the Court should order Julie to produce the original will pursuant to 15 GCA § 1513. Amended Petition, at 1-2 (Feb. 4, 2022). On February 28, 2023, Julie Santos Adamos, a beneficiary of the Estate, filed

an Appearance, Consent, and Nomination, nominating and consenting to Devon serving as Executrix. On March 1, 2022, a Petition Hearing was held, and Devon stated that she needed to amend the Amended Petition because it failed to list Devon and Julie as heirs, and that Devon would ensure Julie received notice of the next amended Petition. *See* Min Entry, at 9:12:21-9:17:34 AM (March 1, 2022).

On March 17, 2022, Devon filed the Second Amended Petition. On April 20, 2022, two beneficiaries of the Estate, Anthony Santos Ballares and Francis Santos Ballares, filed Appearance, Consent, and Nominations, nominating Devon. On April 26, 2022, Julie Santos Adamos filed a new Appearance, Consent, and Nomination, nominating Devon again. On April 27, 2022, two beneficiaries, John Troy Santos and Kim M. Santos also filed Appearance, Consent, and Nominations, nominating Devon.

On April 28, 2022, a hearing on the Second Amended Petition was held, and Julie was not present. Devon informed the Court that Julie had the Decedent's original will but would not respond to Devon's requests to deliver the original will to the Court, and upon these representations the Court continued the hearing to allow for the issuance of an order to Julie to produce the original will. *See* Min Entry, at 10:46:46-10:58:45 AM (April 28, 2022).

On May 6, 2022, the Court issued an Order to Produce Original Will; Order to Show Cause, ordering Julie to produce the Decedent's original will or show cause why she should not. Order to Prod. Orig. Will; Order to Show Cause, at 1-2 (May 6, 2022). On May 26, 2022, at the Continued Second Amended Petition and Order to Show Cause Hearing, Julie appeared with counsel Attorney McDonald and produced the original will to the Court. Min Entry, at 10:07:11-10:29:18 AM (May 26, 2022). Attorney McDonald requested thirty (30) days to respond to the Second Amended Petition because he was "recently hired." *Id.* The Court granted Julie fourteen (14) days to file a response. *Id.*

On June 9, 2022, Julie filed the Cross-Petition. On August 4, 2022, a hearing was held, and the Court set the briefing schedule for the competing petitions. *See* Min. Entry, at 10:29:41-10:33:48 AM (Aug. 4, 2022). On August 5, 2022, Julie filed a Notice of Errata, stating that Julie "inadvertently omitted" Devon's name as an heir of the Decedent and sought to correct it. Notice of Errata, at 1 (Aug. 5, 2022).

On September 1, 2022, Devon filed an Objection to Julie's Petition ("Objection to Cross-Petition") and a Declaration of Georgette Bello Concepcion ("Decl. of Concepcion") in support. Further, on September 1, 2022, Julie filed an Objection to the Amended Petition[1] ("Objection to Second Amended Petition") and a Declaration ("Sept. 1, 2022 Decl. of Julie") in support. On September 15, 2022, Devon filed a Reply to Julie's Objection ("Devon's Reply") and a Declaration in support ("Decl. of Devon"). On September 15, 2022, Julie filed a Reply to Devon's Objection ("Julie's Reply") and a Declaration in support ("Sept. 15, 2022 Decl. of Julie").

On February 16, 2023, the hearing on the competing petitions was held.[2] After hearing testimony and oral arguments, the Court took the matter under advisement.

## DISCUSSION

The issue before the Court is whether to grant Devon's Second Amended Petition or whether Julie has shown good cause for her delay in filing her Cross-Petition and it should be granted.

**A.** **Devon Claims that Julie Renounced Her Right to Be Appointed as the Named Executrix and Therefore, Devon Seeks to be Appointed as the Alternate Executrix**

In Devon's Second Amended Petition, Devon "requests that the Court renounce Ms. Materne's right to Letters by failure to petition pursuant to 15 GCA § 1505," and that the Court

---

[1] Although the Objection was to the "Amended Petition," the objection was to the Second Amended Petition.
[2] Aside from the current filings and parties before the Court, no other objections to either petition were filed in this case.

3

appoint Devon as Executrix because Devon was named the "alternate Executrix" in the Decedent's will. Second Amended Petition, at 2.

### 1. The Court May Hold That an Executor Has Renounced the Right to Be Appointed If a Petition Is Not Filed within Thirty (30) Days of the Testator's Death Unless Good Cause Is Shown

Under the Guam Probate Code, any natural person named in a Decedent's will may be appointed to serve as executor as long as she is: of age, a resident of Guam, physically present in Guam, [has] not been convicted of a felony,[3] and [is] not adjudged to be incompetent to serve due to drunkenness, improvidence, or want of understanding or integrity. *See* 15 GCA § 1701(a),(c).

However, a named executor may be considered to renounce her right to be appointed by the Court and the Court may appoint another person if the named executor is unable to show good cause for the delay. *See* 15 GCA § 1505. The section of the Probate Code, 15 GCA § 1505, titled Renouncement of Named Executor's Right to Letters by Failure to Petition, states:

> If the person named in a will as executor, for thirty (30) calendar days after he has knowledge of the death of the testator and that he is named as executor, fails to petition the Superior Court of Guam for the probate of the testator's will and that letters testamentary be granted to him, he may be held to have renounced his right to letters, and the Superior Court of Guam may grant letters of administration with the will annexed to another competent person, *unless good cause for the delay is shown.*

15 GCA § 1505 (emphasis added).

### 2. Julie Claims That There Is Good Cause for the Delay in Filing Her Cross-Petition and the Court Should Not Consider Her Right Renounced

In Julie's Objection to the Second Amended Petition, Julie claims that "[g]ood cause exists under 15 GCA § 1505 as the delay in filing was due to the COVID-19 pandemic." Objection to Second Amend. Petition, at 2 (Sept. 1, 2022). In her Declarations, Julie reiterates her claim that

---

[3] The Court has discretion to allow a person to serve who has a felony conviction as long as the Court "is satisfied that such person is competent to execute the duties of the trust." *See* 15 GCA 1701(c)(4).

she "did not timely file for letters testamentary because of the COVID-19 pandemic" and further claims that she "did not file for letters testamentary within 30 days of the Decedent's death because other members were in possession of estate property and they refused to cooperate with Julie's efforts to preserve and administer the estate's property." Sept. 1, 2022 Decl. of Julie, at 1-2; Sept. 15, 2022 Decl. of Julie, at 1-2.

In Devon's Reply, Devon claims that "the only reason [Julie] gives as to her failure to petition the Court for probate of Decedent's Will until after [Devon] sought appointment was 'the Covid-19 Pandemic.'" Devon's Reply, at 1 (Sept. 15, 2022). Devon argues that "this reason is not good cause." *Id.* Devon claims that after the Decedent died on November 11, 2019, Devon "personally handed" the original will to Julie on November 27, 2019. *Id.* Devon argues that despite this knowledge of the Decedent's passing, Julie "failed to file a petition" for "three and half months" before the Government of Guam closed non-essential government agencies due to COVID-19 on March 16, 2020. *Id* at 1-2. Devon claims that for these months, Julie "does not provide a reason for her failure to file." *Id.* at 2. Devon also states that she messaged Julie in October 2020 asking Julie if there "was any update on the probate process" but Devon claims Julie "never replied." Decl. of Devon, at 2, 4.

At the February 16, 2023 hearing, Julie elaborated on the alleged good cause for her delayed filing. Julie claims that she met with Attorney John Terlaje "a couple times" to discuss the estate in either late January or early February 2020 but Julie claimed that "nothing really happened after that" with Attorney Terlaje. Min. Entry, at 10:16:25-10:17:01 AM (Feb. 16, 2023). Julie claims that based on Attorney Terlaje's advice, she sought to protect the assets of the estate by requesting the keys to the estate's real property and PO Box but that "cousin Julie" gave the keys to the property and PO Box to Devon instead. Min. Entry, at 10:20:44-10:31:30 AM (Feb. 16,

5

2023). Julie claims that Devon said she would pay the mortgage and "take on the PO box," and Julie stated that she was "okay with that." Min. Entry, at 10:30:02-10:31:30 AM (Feb. 16, 2023). Further, Julie alleges that "in 2021" her mother "came close to a near death situation" and was in the hospital for "more than a month," and Julie claims that "she was also busy with that." Min Entry, at 10:36:49-10:37:07 AM (Feb. 16, 2023). Julie argues that she did not intend to renounce her appointment as executrix and now seeks to be appointed as executrix. Min Entry, at 10:28:10-10:29:38 AM (Feb. 16, 2023); Cross-Petition, at 1.

### 3. Good Cause for Delay Standard When Filing a Late Petition

Pursuant to 15 GCA § 1505, the Court has discretion to find that an executor renounces her right to be appointed if she does not file a petition within thirty (30) days unless good cause for the delay is shown.[4] 15 GCA § 1505; *In re Fiddyment's Estate*, 168 P.2d 61, 63 (Cal. 1946) (holding if the named executor fails to petition the court within thirty (30) days, he may be held to have renounced his right to letters testamentary and the court may appoint any other competent administrator unless good cause for delay is shown).

When considering if there is good cause for the delay, courts have discretion and tend to consider the circumstances around the delay including the length of the delay, the cause(s) of the delay, and whether any party has been harmed by the delay. *See In re Fiddyment's Estate*, 168 P.2d at 78 (finding cause of delay and "injury to the persons interested under the will" are relevant to the analysis of good cause for the delay); *In re Deutsch's Estate*, 318 P.2d 847, 848 (Cal. 1957) (finding no good cause for delay when the named executor did not petition the court for more than two and a half (2½) years while simultaneously giving legal advice to interested persons in the estate); *Est. of Ringgold*, 2012 WL 5505076, at 2-4 (Cal. Ct. App. Nov. 14, 2012) (finding no good

---

[4] 15 GCA § 1505 is sourced from California Probate § 324, and therefore, California case law provides persuasive authority. *See Cruz v. Cruz*, 2005 Guam 3 ¶ 9 (finding California case law is "persuasive" authority for Guam statutes that are derived from California statutes).

cause when the name executor "neglected" the estate and failed to petition the court for over four (4) years and claimed that the delay was due to her litigation efforts to be trustee of the decedent's trust); *In re Alfrey's Est.*, 83 P.2d 291, 292 (Cal. 1938) (finding no good cause for a four-month delay in filing a petition for letters testamentary when the named executrix had willful intent to injure the interests of the other heirs). *But see Matter of Est. of Bearden*, 800 P.2d 1086, 1088 (Okla. 1990) (finding good cause was shown when the named executor petitioned the court approximately three (3) months late after the attorney who prepared the decedent's will told the executor that he "didn't really see any need to probate a will, due to the lack of assets in the estate"); *In re Minder's Estate*, 270 P.2d 404, 408-13 (Mont. 1954) (finding good cause was shown when no injury was caused to heirs by the one (1) year delay and the named executor waited because the decedent's wife requested that he delay due to her ill health).

**B.      Julie Primarily Relies on the COVID-19 Pandemic as the Alleged Good Cause for the Delay But Also Alleges Issues with Attorney Terlaje and Family Members**

With regard to the alleged good cause for the delay in filing, Julie relies primarily on the COVID-19 pandemic as the reason she did not file her Cross-Petition until June 9, 2022. Obj. to Second Amend. Pet., at 2; Julie's Reply, at 1-2. Julie also alleges two other reasons prior to the pandemic—meeting with Attorney John Terlaje where "nothing really happened after that" and "the refusal" of Julie's family members to cooperate with her efforts to preserve the estate.

**1.      Prior to the COVID-19 Pandemic, Julie Alleges that She Met with Attorney Terlaje in 2020 But Provides Limited Details on Why This Caused Her Untimely Filing**

While Julie did not allege that she met an attorney in her filings, Julie claimed at the February 16, 2023 hearing that she had met with Attorney Terlaje "a couple times" in early 2020

7

but that "nothing really happened after that."[5] Min. Entry, at 10:16:25-10:17:01 AM (Feb. 16, 2023). At the hearing, Julie provided limited details regarding these meetings with Attorney Terlaje but claimed that Attorney Terlaje told her to preserve the assets of the estate by seeking the keys to the estate property and PO Box and to account for the monthly bills. *See* Min. Entry, at 10:20:44-10:31:30 AM (Feb. 16, 2023). Besides this recommendation, Julie does not state anything else that Attorney Terlaje assisted with, only that "nothing really happened after that" and that she later sought Attorney McDonald's assistance in the matter. Min. Entry, at 10:16:25-10:17:01 AM (Feb. 16, 2023).

2. **Julie Alleges That Family Refused to Cooperate But Does Not Provide Evidence That These Actions Caused Delay in Filing**

Julie claims that another reason for the delay was when she attempted to preserve the estate assets "under advisement of Attorney Terlaje," family members "refused to cooperate." Sept. 15, 2022 Decl. of Julie, at 1-2; Min. Entry, at 10:20:24-10:21:37 AM (Feb. 16, 2023). While Julie did not provide specific details about this claim in her filings, at the February 16, 2023 hearing, Julie claimed that the family members who refused to cooperate were "cousin Julie" and Devon. *Id.* Julie alleged that "cousin Julie" gave Devon the keys to the estate's property and PO Box instead of giving them to Julie. *Id.* However, in her testimony, Julie also admitted that after Devon received the keys, Devon offered to pay the mortgage of the property and "take on the PO Box" where the monthly bills came. Min. Entry, at 10:23:56-10:31:30 AM (Feb. 16, 2023). In her testimony, Julie stated that she "was okay with that." Min. Entry, at 10:30:55-10:31:00. Julie does not provide any

---

[5] The Court notes that the meeting with Attorney Terlaje in either late January or early February 2020 also occurred over thirty (30) days after learning of the Decedent's death, which occurred on November 11, 2019, or at the latest on November 27, 2019 when Devon personally handed Julie the Decedent's original will. Devon's Reply, at 1 (Sept. 15, 2022).

more information why these actions—Devon receiving the keys and taking on responsibility for the mortgage and PO Box—prevented Julie from being able to preserve the estate assets or file a petition. Instead, contrary to Julie's claim, the Court finds that Devon's actions, like bringing the original will to Julie and paying the mortgage on the estate's real property, assisted with preservation of the estate's assets.

3. **Julie Never Attempted to Petition the Court or Consult with Another Attorney about the Estate Until After Devon Filed Her Petition**

With regard to Julie's primary claim that the COVID-19 pandemic prevented her from timely filing her petition, the Court notes the operational changes that occurred at the Judiciary of Guam due to the COVID-19 pandemic in 2020.

Beginning on March 16, 2020, the Supreme Court of Guam issued Administrative Order No. ADM20-210, which suspended non-essential operations of the Judiciary including probate proceedings due to the COVID-19 pandemic. *See* ADM20-210, at 1-2. The Supreme Court released additional orders the following months continuing to suspend non-essential operations and postponing various types of hearings including probates. *See* ADM 20-239. However, despite the Judiciary of Guam being closed to the general public, Administrative Order 20-239 issued on May 4, 2020, stated that "the court is deemed always open for filing any proper paper" and provided contact information for electronic filings. *See* ADM 20-239. Further, as of September 4, 2020, the Supreme Court designated that probate petitions were "appropriate for hearings on a virtual platform" and the Court could conduct probate proceedings online. *See* ADM 20-406.

While Julie makes assertions that the "COVID-19 pandemic" prevented her from filing a probate petition, Julie does not provide details on *how* the pandemic prevented her from filing a petition. First, as noted above, over three and a half months had already elapsed without Julie filing

9

a petition prior to the COVID-19 pandemic. Next, although the Administrative Orders limited the Court's functions, the Court was open for electronic filings of probate documents as early as May 4, 2020, and by September 4, 2020, the Court authorized the virtual hearing of probate petitions. *See* ADM 20-239; ADM 20-406. Julie does not allege at any time during these months did she attempt to file a petition at the Court.

Next, Devon claims that she messaged Julie in October 2020, over ten (10) months after the Decedent had passed away, and asked Julie if there was any update on the probate for the estate, but never received a reply from Julie. Decl. of Devon, at 2, 4. Julie does not dispute that Devon sent this message nor that she did not reply. Instead, Julie provides no information related to this request or any actions she took in response to it.

At the hearing, Julie claimed another reason during the pandemic for the delay was that her mother also became sick in 2021 and had to be hospitalized for over a month. Min. Entry, at 10:36:48-10:37:07. However, the Court is unsure if this is related to her claim that COVID-19 pandemic caused her untimely filing because Julie does not specify if her mother was sick with COVID-19 or some other illness. *Id.* Further, Julie provides limited details regarding her obligations at this time only that she took care of her mother and so she was "busy with that." *Id.* The Court notes that Julie did not mention this obligation or illness in her filings, including her two declarations.

Julie also does not allege she consulted any other attorneys after Attorney Terlaje in January or February 2020 until she obtained Attorney McDonald for this case. When asked when she hired Attorney McDonald, she stated that she "was not too sure on the dates," and when asked if it was before receiving the Second Amended Petition, which was filed on March 17, 2022, she stated that it "could be" but could not remember the dates. Min. Entry, at 10:35:20-10:37:08 AM.

10

While Julie does not provide a date for her contact with Attorney McDonald, the Court notes that at the May 26, 2022, hearing, Attorney McDonald stated that he was "recently hired." Min. Entry, at 10:07:11-10:29:18 AM (May 26, 2022).

Upon review, based upon Julie's own claims, Julie knew of the Decedent's death in November 2019 and consulted Attorney Terlaje in early 2020 with regard to the Decedent's estate but did not file any petitions with the Court despite being named as an executor and having the original will in her possession. While Julie claims that the COVID-19 pandemic outbreak occurred which caused her to be unable to file her Cross-Petition for letters testamentary until June 9, 2022, she provides limited and unpersuasive reasons for why she was unable to file.

### 4. Devon Claims Julie's Delay in Filing Resulted in Unnecessary Financial Burden

Devon claims that "[Julie's] failure to open probate and administer the Estate for three (3) years result[ed] in prejudice to [Devon]." Devon's Reply, at 2. Devon alleges that Julie did not try to preserve the assets of the estate like paying the existing mortgage on Lot No. P19-1-A-10, which Devon is set to inherit under the will. *Id.* at 2-3 Instead, Devon claims that she had to take on the responsibility to pay the mortgage "while she waited for her aunt." *Id.* at 3. However, Devon stated that one of the reasons she petitioned the court for letters testamentary was because she "needed to start the process of refinancing the existing mortgage in her name." Reply, at 2-3; Obj. to Cross-Petition, at 2.

As stated above, Julie acknowledged that Devon began paying the mortgage on the estate's real property asset. These payments by Devon have been done in an effort to preserve the estate's asset, which Devon alleges is to be distributed to her in accordance with the Decedent's will. Reply, at 2-3. To the extent that Devon has been making mortgage payments on the property and

11

may have been able to re-finance the mortgage in her name at a better rate, the Court finds that this delay has caused Devon to be financially burdened. The Court further finds that the extent of this financial burden could have been limited with a timely filing of a petition to open probate for this estate, which Julie failed to accomplish.[6] *See* 15 GCA § 1505. Therefore, the Court finds that Julie's delay in filing for letters testamentary has resulted in unnecessary financial challenges to Devon, an interested party under the will.

### 5. Julie Has Failed to Show Good Cause for the Delay

Based on the foregoing reasons, the Court finds that Julie failed to file her petition for letters testamentary for over two and a half years despite being aware of the Decedent's death and seeking legal counsel with regards to the Decedent's estate as early as January 2020. Julie has offered no persuasive reasons for this lengthy delay, and the delay has caused a financial burden to Devon who has been responsible for mortgage payments on the estate's real property. Based on the length of delay, the lack of persuasive reasons for the delay, and the burden caused by the delay, the Court finds that Julie has failed to demonstrate "good cause" pursuant to 15 GCA § 1505, and the Court holds that Julie has renounced her right to be appointed as executor of the Decedent's estate.

### C. Devon Is Named as the Alternate Executrix and Is Competent to Serve

In the Second Amended Petition, Devon claims to be the "alternate Executrix" and should serve if Julie renounced her right. *Id.* at 1-2.

The Will states that "[i]f my niece JULIE MARIE DJ MATERNE shall fail to qualify for any reason as my Executor . . . I appoint my niece DEVIN SANTOS MARTINEZ as my

---

[6] The Court notes that the Guam Probate Code was written to ensure that probate occurs in a timely manner and includes time standards for filings, hearings, and noticing. *See* 15 GCA §§ 1505, 1515. In addition, a personal representative for the estate needs to be appointed to begin identifying creditors for the estate which could affect the assets. 15 GCA § 2503 ("The personal representative, promptly after letters are issued shall make a reasonable investigation as to the identities of the decedent's creditors.").

Executor."[7] Seconded Amended Petition, at Ex. B; Cross-Petition, at Ex. B. Neither Julie nor Devon contests the validity of the Last Will and Testament of Juan Perez Santos (the "Will").

With regard to Devon's request to be appointed executrix, Devon verifies in her Seconded Amended Petition that she is "over the age of majority, a bona fide resident of Guam, and has never convicted [sic] of a felony, or a crime of moral turpitude."[8] Second Amend. Petition, at 3.

As stated above, any natural person may serve as executor who is of age, a resident of Guam, physically present in Guam, have not been convicted of a felony, and are not adjudged to be incompetent to serve due to drunkenness, improvidence, or want of understanding or integrity. *See* 15 GCA § 1701(c).

Therefore, upon review, the Court finds that the Decedent's Will meets the required formalities pursuant to 15 GCA §§ 201, 1519. The Court further finds that Devon is named as the "alternate executor" in the Decedent's Will and meets the qualifications to serve as executrix.[9] Based upon Julie's renunciation as the named executrix, the Court finds that pursuant to the Decedent's Will, Devon is named as the next in line to serve as executrix and is competent to serve.

## CONCLUSION

For the forgoing reasons and based upon the applicable law, the Court finds that Julie has not shown good cause for the delay in filing her petition to be appointed executrix and finds that Julie has therefore renounced her right to serve. The Court hereby **GRANTS** Devon's Second Amended Petition and **DENIES** Julie's Cross-Petition. The Court appoints Devon to serve as Executrix and admits the Decedent's Will to probate. Devon shall submit a proposed order

---

[7] Although the Will spells Devon's name as "Devin," Julie does not argue that Devon is not named in the Will as the alternate executrix.

[8] The Second Amended Petition was verified and signed by Devon.

[9] Julie did not make any allegations that Devon was not competent to serve, and no other interested parties objected to Devon's competency.

13

admitting the Will to probate and appointing Devon as Executrix within fourteen (14) days. A Status Hearing shall be held on **August 9, 2023 at 9:00 a.m.**

SO ORDERED: _____ JUN 2 9 2023 _____.

_____
HONORABLE DANA A. GUTIERREZ
Judge, Superior Court of Guam